Case No. 21-5036, I.D. Kangio, et al. v. Drexel Chemical Company. Oral argument, 15 minutes per side. Mr. Vance for the appellants. Robert Vance representing the appellants, E.V. Kangio, et al. And if I could, I'd like to reserve three minutes of rebuttal time. So your honors, this is a case in which 41 residents of the Dominican Republic who are natives of Haiti, the neighboring country, work in the sugarcane industry, the sugar industry in the Dominican Republic, applying pesticides to sugarcane plants at various stages of growth. Some of those pesticides are manufactured by the defendant, in this case, Drexel Chemical Company. And the appellants contend that their exposure to those pesticides has resulted in injury to them. So if I could, your honors, there are a number of issues that are raised on this appeal, but I would like to, subject to your honors' questions, focus my attention on two specific issues. The first being that the district court, our contention that the district court committed an error of law and abused its discretion in denying the appellant's motion for leave to amend the complaint. And the second issue being that the district court committed an Products Liability Act claims, which we refer to as TPLA. The TPLA claims violated the one-year statute of limitations. So first, with respect to the contention that the district court should have granted the motion for leave to amend, I would first point out that the proposed First is design defect, and the second is failure to warn. At page 24 of the reply brief, I referenced those paragraphs of the proposed amended complaint that make out the design defect claim, referring to 31 specific paragraphs, 16 of which are new paragraphs put in the amended complaint, and two were old paragraphs from the initial complaint that were modified. With respect to the failure to warn claim, on the same page I make reference to 16 paragraphs, five of which are new that were put in the amended complaint, and two which were amended paragraphs from the initial complaint. The district court, there was no basis to deny the motion for leave to file an amended complaint because the case law suggests that the only basis to do so is if amendment would be futile. The principal basis to do so would be if amendment would be futile. I think as demonstrated in the reply brief, that is not the case. Moreover, there was no showing by the defendant of any significant prejudice to it if the motion for leave to file an amended complaint had been granted. The district court made reference to this case having a three-year history, which is technically correct, but practically not the case. For example, the COVID-19 pandemic essentially put this case on hold for five or six months, and then the court itself effectively put the case on hold for another 19 months when it had counsel for the parties brief issues of foreign law, which it never, ultimately never decided when it issued the order that's under appeal on December 24th of 2020. Secondly, more importantly, discovery had not commenced in this case at all, and the proposed amended complaint did not add any new claims. The case of Knight v. Capital Partners, which It's our contention that the district court should have followed the case from this circuit of Morse v. McWhorter, which is referenced on page 39 and 40 of the brief. And that case indicates that in response to a motion to dismiss, it is appropriate for a plaintiff to recognize that there may be issues with the initial complaint filed, file a motion for leave to amend, and that the court in the Morse case indicated that it would have been reluctant to make any kind of decision on whether the proposed amended complaint in that case was viable without there being an opportunity for there to have been full briefing on the proposed amended complaint. That did not occur in this case. I would also point out that the district court criticized the plaintiffs for not, or I should say, criticized the plaintiffs for discussing in their motion facts that were not included in the original complaint. However, as referenced in the Highsmith case, Highsmith v. Chrysler case, which the appellees weakly challenged in their brief, it is good law in this circuit and in many other circuits in this country that the appellants can raise for the first time on appeal and the court should consider new factual allegations that are consistent with the complaint and that were not raised or were prevented from having been raised before the district court. So with respect to that, the appellants discussed significant new facts related to many of the issues, some of which I'm going to get to, but specifically those facts that made out a failure to warrant claim and those facts that made out a design defect claim. So the underlying issue that this issue that you're raising about leave to amend is whether there's a statement of a claim under those two tort claims. Is that right? Right, that's correct. One is failure to warrant and one is design defect. Design defect. Design defect is that it was a pesticide that included these extremely dangerous elements, right? Correct, and it's our contention that the district court did not specifically analyze the allegations of the proposed amended complaint in coming to the conclusion that it was going to deny leave to amend. And those are for tort claims, right? Those are what we think of as tort claims, right? Correct. How do we know that Tennessee law applies to that as opposed to Dominican Republic law? Well, the brief specifically addresses the Tennessee TPLA cases that... What brief? Your brief? My brief, yes. Okay, that's what I'm asking. What's the reasoning for only doing that? For only doing... Only addressing Tennessee law when there's an argument that Dominican Republic law should apply to these claims? Well, there is no argument because in the proposed amended complaint, the appellants intend to solely advance claims under Tennessee law. There is no intention in the proposed amendment complaint to submit... That's your complaint, right? Correct. So you're disavowing any relief under Dominican law at this point? Correct. Correct. Even if... And you're making no argument that the dismissal of those claims was improper? I wouldn't say that, but as a matter of... Why not? I mean, does it make any difference? Do we have to resolve that now that you've waived all the claims under the Dominican Republic law? No, no, you don't. Because if the appellants are granted leave to file an amended complaint, the complaint will contain one claim under the TPLA, raising those two theories, failure to warn and design defect. So you don't have to... And then, well, I suppose the other side could say that Dominican Republic law applies. But I'll ask them, and if they say no, then we don't even need to talk about Dominican Republic law. No, we don't, and I don't intend to. I'm sorry? We do not, and I do not intend to talk about Dominican law here. You don't what? Intend to talk about DRR. I don't intend to talk about Dominican law here. All right. But what I would... But you would have to if there was a dispute as to what law applies. But if you both agree to apply TPLA law, it makes the case simpler, which might be nice for us. That's why I'm trying to figure it out. But as far as you're concerned, we're just... The only thing that's left in this case is claims under the TPLA. Is that correct? That's correct. That's correct. All right. If I could also turn my attention to the issue, the second issue I raised, which was the district court's finding that the TPLA claims violated the one-year statute of limitations, and that finding was erroneous for a number of issues. First of all, there were 41 plaintiffs in this case. The district court treated them all essentially as one plaintiff. However, three of those plaintiffs, Alexander Raymond, Erg Nogent, and Sondra Young, their claims, they had only been working as fumigators, applying these pesticides one year or less before the time that the complaint was filed. So Tennessee has a one-year statute of limitation for TPLA claims. So at least with respect to those three plaintiffs, there was no statute of limitation violation. Point me to where exactly you allege that in your complaint. As to how long they have been working? Well, with enough specificity that we can pin that down to the one-year period. With respect to Mr. Raymond, it's paragraph 33 of the complaint. With respect to Mr. Jean, it's paragraph 49 of the complaint. And with respect to Mr. Young, it's paragraph 53 of the complaint. Because with respect to each plaintiff, there is a separate paragraph which alleges how long they have been working as fumigators. Yeah, my concern is that, and I don't have it in front of me, so I may be just misrepresenting, but it's one thing to say that they worked for a year or less, but that does not say a year or less starting when and ending when. That is correct. In order to figure out the statute of limitations issue, we'd need to know when was the last day they worked. Your Honor, you guys have a point. However... Is it in there? No, there's no start date. No, I'm really more concerned about an end date. There's no end date, but as of the time of the filing of the complaint, each plaintiff had been working the number of years that's stated in the complaint with respect to that particular plaintiff. So, in other words, Mr. If you have to figure out when the last day of working would have to be to fall within the one-year statute of limitations, wouldn't it be helpful to us if you put that in the complaint? No, it's not a question of the last day of working. As of the time... What makes the complaint timely as to each one of those? Because as of the date that the complaint was filed, each one of those persons had been working a year or less. They could have worked a year or less four years before that. They were current employees? Yes, they're all current employees. And it says it in the complaint. Okay, that's what I'm asking. Oh, I'm sorry. I'm sorry, Your Honor. I'm sorry. I just want to know where exactly it is that I can look to be certain that as to each of these plaintiffs, the work time that they are complaining about, at least one day of it falls within the statutory period. Correct. It states that they are current employees and they have been working for X number of years. The issue with respect to the statute of limitations, essentially, is a question of whether or not the statute of limitations should have been told following the Foster and the Red Wing cases until these plaintiffs had discovered the identity of Drexel as a manufacturer of the pesticides that they were exposed to. And it's our contention, Foster and Red Wing are still good law. I don't think that the appellees take a contrary position. The cases that have been cited against Foster and Red Wing are simply cases from this circuit where the circuit has chosen to follow the Haines line of cases as opposed to Foster and Red Wing. But Foster and Red Wing are still good law. But nonetheless, there are key facts which are referenced in my brief at pages 16 through 18, which indicate why the plaintiffs in an amended complaint would be able to demonstrate that they exercised reasonable diligence and made a reasonable effort to ascertain the statute of limitations period. And that did not occur until the summer of 2017, which would make the filing of the complaint, with respect to all of the plaintiffs, timely as within the one-year statute of limitations under the TPLA, because the complaint was filed in Tennessee State Court in February of 2018. I don't want to take up my rebuttal time. I assume I'm doing that by continuing to talk. So. Can I ask some questions that won't take up his time? I just want to be double clear. I may be repeating myself. If you lose on either the statute of limitation claim or the territorial limit of the TPLA issue, is that before us? It is. Okay. So if you lost on that issue or the statute of limitation issue, assuming they were before us, then your case is over, basically, unless you go to the Supreme Court. Do I understand that right? If I get addressed the extraterritoriality issue, that is an issue raised by the defense. And I understand that this court is within the province of this court to pick any issue that was raised below to affirm the decision of the district court. So although the district court found that the TPLA does apply extraterritorially, that this court could have a different view. And that's what the defense raised. However, you are correct, Your Honor, that yes. It's just those two issues would be killers for you at this point, disregarding the possibility of going to the Supreme Court. Am I clear that that's correct? Yes, you're clear. Absolutely clear. Okay. And the other question I had, I think you answered. Thank you. Okay. All right. Thank you. Okay. Good afternoon, Your Honors. Ken and Alan for Drexel Chemical. If I could start with Justice Rogers' question about killer issues. In addition to the statute of limitations, in addition to the extraterritoriality question, the other issue that would be the end of the plaintiff's case is TPLA. If they have failed, plaintiffs failed to state a claim under the Tennessee Product Liability Act, then their case would be over. Fair enough. I understand. And in this case— You agree that we don't need to get into the Dominican Republic law or choice of law or any of that because of their concession? Your Honor— Yes? No, sir. Well, you don't. No, sir. And the reason that I— You want to argue Dominican Republic law, then? I actually want to argue what plaintiff has asserted in their proposed amended complaint. He said they did not assert Dominican law claims. In fact, they did. They asserted— They pretty well conceded them right today, didn't they? I've heard that now, Your Honor, for the first time today, that he has no— Are you willing to accept that or not? Yes, Your Honor. Okay. Then my question stands. So we don't need to get it because neither of you is arguing it at this point. Is that right or not? I need to know. On the Dominican Republic law claims. I'm sorry? On the Dominican Republic law claims. If plaintiff's concession today is— You don't have any arguments that any of these issues under the TPLA have a different answer under Dominican law that we need to look at? No, sir. Right? You don't? That's correct. Okay. Thank you. I just appreciate the clarity on this. Thank you. Go ahead. With respect to whether the TPLA governs, that's a question of extraterritoriality. The trial court concluded that it does have extraterritorial application based on the direct effect test that's found in the Foreign Sovereign Immunities Act. We disagree with that finding. But ultimately, your honors, the issue is a statute of limitations claim, as the court has observed, as well as whether they stated a claim. Mr. Vance asserts that the Red Wing case should govern the statute of limitations. So the issue is this. Does the statute begin to run as soon as the plaintiffs know that they have an injury? Or is the statute told until such time as they know the identity of the defendant? The plaintiffs in this case argue that the statute is told until they knew Drexel's identity. That is simply not the law. Do you have state cases that support that? Yes, your honor. What? Yes, your honor. What? What? What? What? We submitted a Rule 28J letter. Well, I looked at that letter carefully. But I'm not sure I found what you say that it says. In the case, it's Smith versus Amazon. But that's a federal case, right? Yes, sir. OK. I'm talking about state cases now. And what the... They cite Schultz, right? That's correct. And Schultz compared to Red Wing is what? Later or earlier? Schultz is actually earlier than Red Wing. So it can hardly say that Schultz overruled Red Wing. No, sir.  It's a Sixth Circuit case anyway. Subsequent cases have found that, that under Tennessee law, the statute begins to run at the time that the plaintiffs are aware that they've been injured. Without regard to who caused the injury? Yes, your honor. And I believe... What are the cases? I mean, you didn't cite those in your letter, did you? No, your honor. In the Amazon case, the court found... That's in your brief. I'm actually quoting now, your honor, from the Amazon case. In our brief, your honor... Your brief cites Amazon. Is that what you're saying? No, sir. Amazon was decided after we had submitted the brief. Oh, Smith v. Amazon. Oh, this is the Smith case. Okay. Yes, sir. All right, go ahead. And in that case, your honor, the court ruled that the Sixth Circuit has held that the discovery rule tolls the statute of limitations only when injury, not the defendant, cannot be reasonably discovered. So the recent district court case in Tennessee holds based on a decision of ours which predated Red Wing. Is that right? Yes, your honor. So how is that compelling? I mean, I'm not saying because if there's tension between Schultz and Red Wing, Schultz is one of our cases discussing precedents from before Red Wing. Do I have the chronology right? You do, your honor. And the reason— I'm not seeing how that tells us very much of anything. The reason that neither the Red Wing case nor the Foster case are controlling, that is, those are cases in which the court ruled that the statute began to run when they knew the identity of the defendant. Let me ask you this. If Red Wing is the law, how do we rule in your case? We have to send it back to see whether they knew whether Drexel was involved, that kind of thing, because that isn't what the court looked at? Or you just don't want to accept the hypothetical question? Well, your honor, if the court were to rule that Red Wing controls— Yeah, we would only rule that if it was correct. And the statute of limitations did not start to run until they knew the identity of Drexel. If that's the application of the law, then I think your honors would have to send it back to the district court. Yeah, so we just need to figure out whether Red Wing is still good law, basically, is what we need. That's our job now, right? Your honor— Is that correct? I'm just trying to narrow the issues. I'd rephrase it, your honor. I believe the question is, are the Red Wing facts, as it relates to the identity of the defendant, do those facts apply to this case? Because, your honor, in this case, Drexel is on the label. The Ministry of Agriculture approves the product. The employers know what the product is. That isn't how the lower court ruled, though, right? The lower court assumed that Drexel, that something like Red Wing was not the law, and you just looked at whether you had an injury or not. Is that correct? Pardon my voice is going out. No, that's— Your honor, the lower court did rule that, in the Sixth Circuit, the identity of the defendant is not material to when the statute begins to run. Seem to say that. Yes, sir. And I believe, under Tennessee law, both the Foster case, which is the initial case, has been limited. It's an unusual set of facts, with a dental plaintiff who contracted hepatitis and didn't know where he got it from. That case, your honor, has been limited by Tennessee law. And so, in this case, similar to the Schultz case, the plaintiffs knew, according to their arguments before the court, that they were injured on the first day that they performed their work as fumigadores. Can I ask you this? Because I'm reading from your paragraph of your— I appreciate your 28-J letter. Help me try to analyze this case. Okay, no problem submitting it and citing the case. I'm just wondering about what it says here in the middle paragraph. It says, this recent case, Shultz v. Davis, which is an older case, all right? And a Middle District of Tennessee case, but that's not binding on us. So I'm looking at the Schultz case. It says, I guess that's the Warder case, and concluded that every post-Red Wing decision has followed Schultz and limited Red Wing. When you say every post-Red Wing decision, you mean every post-Red Wing decision from this court? You mean cases of ours? Is that what you're talking about? Cases of ours that have followed Schultz? Your Honor, we're— Or you mean District Court cases that have followed Schultz? Your Honor— Or Supreme Court of Tennessee cases that have followed Schultz? Which do you mean when you say the courts have followed Schultz and limited Red Wing? Which cases are you talking about there? I guess that's my question. We were quoting from Smith v. Amazon, in which the District Court, having done a survey of cases on this issue— I'm just asking if you'll help me. That survey of cases was a survey of what kind of cases? It would have been each of the cases that the District Court was able to find on this specific issue. That is, is the statute told until such time as the defendant's identity is discovered? Your Honor, and under the Tennessee statute, I want to add that the statute requires the plaintiffs to use reasonable diligence to identify the defendant. You're not answering my question. I'm just asking— I can go look at them all, but I'm wondering whether those aren't all Federal District Court cases or not. Your Honor— You don't know, so I'll look it up. That's fine. If they're all Federal District Court cases, though, we've got to look at Red Wing then, don't we? Rather than what Federal District Courts have done to Red Wing. I know at least one of them is a Federal District Court case. I don't know about all the others, but if they're all Federal District Court cases, we've just got to look straight at Red Wing, right? We're not bound by District Court cases that refuse to follow a Supreme Court case of Tennessee on a Tennessee law issue. Yes, sir. Right? Okay, thanks. I'm sorry to ask so many questions, but this is a confusing case for me. I'm trying to get it all straight, and your answers are very helpful. Thank you. Your Honor, the— Does it make any difference in your analysis that in Red Wing there had been at least some concealment  The defendants had concealed that? Yes, Your Honor. What difference does it make? Because in this case, there is no concealment, and there was never alleged to have been any concealment by Drexel that it manufactured these products. And in Schultz, was there concealment? Because I don't remember. In Schultz involves individuals who are walking through a house that was under construction, and some drywall fell on them. It was not obvious who it was who delivered the drywall, and they had to then use reasonable diligence to identify who the drywall delivery entity was. But there was no attempt to conceal that by the defendant in that case? That's correct, Your Honor. And it's that precise point. There's no concealment in this case. It's never been argued that Drexel ever attempted to conceal its identity in this case, and that's why Red Wing doesn't apply. In this case, the plaintiffs conceded that they knew on the day that they used the product that they had an injury because they were exposed to the pesticides, herbicides, actually, Your Honor. And with regard to the three plaintiffs who are alleged in the complaint to have used the products for one year, in fact, we know based on the allegations of the complaint that it's a year and roughly 36 days because there was a companion case that was filed in Philadelphia. It was filed 36 days earlier, January the 15th of 2018. This case was not actually filed until February the 22nd of 2018. Different defendants, though? Different defendants, though? Drexel was a defendant, and there were additional defendants. In the other case, Drexel was a defendant? Yes, sir. Yes, sir. And so it's plain, when the plaintiffs stated for those three that they had worked for one year, at the time that the complaint was filed, it was at least 13 months. That means that their claims are barred because they allege— Why is it at least 13 months? Because in the Philadelphia action that they filed one month— These are the same plaintiffs in the Philadelphia action? Yes, Your Honor. Okay. Same plaintiffs, same allegation. We worked for a year, but when you put the two together, it's apparent that it means at a minimum they'd worked 13 months. Thank you. If I might address the TPLA issues. In order to allege a complaint under TPLA, the plaintiff has to allege why it is that the product is more dangerous than the ordinary user would expect or is so dangerous that a reasonably prudent manufacturer wouldn't market it. And despite what plaintiff has said, in the original complaint and in the proposed amended complaint, there are no such allegations that state why it is that this is more dangerous than the ordinary consumer would expect. I'd like to further add, the plaintiff, in their brief, for the first time, raised the issue of fraudulent concealment. That's a claim that's not in the proposed amended complaint. That claim's been waived. So our argument— the new allegations that they propose to bring in if they are allowed to amend, do they allege that Drexel did that, or are they alleging that their employer did that? It's a good question, Your Honor. In their briefing, they say the employer hid Drexel's identity. They do not claim that Drexel hid its identity. They have a curious allegation in their reply brief in which they say that Drexel should have known better. But there are no affirmative allegations that Drexel ever attempted to hide the fact that it was a manufacturer. And in fact, to the complaint, they attached Drexel labels that have Drexel's name on them. Let me just add, if I may, these products don't get sold in the Dominican Republic if they're not approved by the Ministry of Agriculture in the Dominican Republic. And so these labels all have the Ministry of Agriculture's stamp of approval. The seal is actually on the labels. So interestingly, they do not allege that they went to their employers and said, who manufactures these chemicals? They didn't go to the Ministry of Agriculture to say who manufactures this. They didn't go to the people who mix it up, who actually have their hands on the products to say who manufactures this stuff. There's simply no allegations in the complaint of any effort on the part of the plaintiffs to find out who it is who's manufacturing the product. And for that reason, in response to Your Honor's question, I think that the case does not, should not go back. The allegations of the complaint are simply insufficient for tolling, for reasonable due diligence. These claims are simply barred. If there are no other questions, I see that I'm out of time. No, thank you. Thank you. Thank you, Your Honors. Thank you. If I may. Counsel, I just want to clarify something. Yes. So your TPLA claim, one is a warning claim. I didn't hear what you said. The TPLA claim, one is a warning claim. Is that correct? Correct. And the other is... Design defect. In the sense that it is just too dangerous. I'm not, can you... Yes, basically. Basically, that's it. Correct. That the component parts of the pesticide are too dangerous under the circumstances and that they create, and that they cause harm to my clients. But if I can address a few points that were raised by Drexel. First of all, Red Wing is still good law. So is Foster Good Law. And Your Honor, on this 28 letter, rule 28 letter, all of the cases that Drexel refers to as being part of this review, they're all federal cases. None of them are state cases. And in fact, Drexel asserts in this letter... Any court of appeals cases in there? There are... Because even if it was... No, there are no court of appeals cases in here. And in fact, Drexel states that every post-Red Wing decision has followed Schultz and limited Red Wing... I'm sorry, let me slow down. The Red Wing ruling to its facts. That is absolutely incorrect. The case of Miller v. Schultz, 2021, West Law, 216-8952, May 27, 2021, stated that this court has stated that Foster is only somewhat limited to its facts. So neither Foster nor Red Wing is limited to its facts. That's number one. Secondly, I would like to just briefly run through these facts, which we can allege in an amended complaint following Highsmith and following the Hoover case that this court decided, which indicate that the statute of limitations should be told. Drexel makes reference to the labels. My clients don't... These labels are in Spanish. My clients don't speak Spanish. They don't read Spanish. They're Haitian. They read... First of all, they don't read. They speak Haitian Creole. So the fact that the labels are attached to the containers means nothing because they have no access to the labels. I would suggest that your honors, if I could, direct your attention to pages 16 through 18 of the brief, which lays out the facts, which indicate that my clients, they had used all due diligence on their part to try to find out who manufactured the pesticides that they're exposed to. And it wasn't until a third party who works with them undertook some kind of clandestine operation in the summer of 2017 that they were able to discover... that they were able to get the labels, the actual containers from some of the pesticides that they were used, pictures of which, some of which we did attach to the complaint, but they were all the product of this 2017 investigation to find out exactly who manufactured these pesticides. So the notion that they did nothing, considering where they live, how they live, they have no access to internet, for example, like in the Willis case where the plaintiff admitted they discovered the identity of the defendant by an internet search. They have no internet. They have no access. Some of these batets in which these people live, the communities in which these people live, have no electricity, let alone a public library or anything like that, or access to a public library. So they live in circumstances where what their day-to-day existence is getting up, going to work, making money so they can feed themselves and their families. They don't have the leisure time to do what we can in this country. So they have used all due diligence at their disposal to try to identify who manufactured the pesticides that caused them harm. So I would submit to your honors that this is a case where Red Wing and Foster dictate that this case should go back to the district court with instruction for the court to allow the plaintiffs to amend the complaint to indicate why the statute of limitations should have been told. And furthermore, the fraudulent concealment is not a claim that the plaintiffs are waiving. And again, I would just commit to your honors if you would, to look at pages 17 through 19 of the reply brief, which again lay out in 11 paragraphs those facts which establish fraudulent concealment. Thank you very much for the opportunity to address you this afternoon, unless you have any questions. No questions. Thank you. The case will be submitted and thank you for your arguments.